UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERMAINE R. TOBEY,                           Case No. 11-15069

                    Plaintiff,               Marianne O. Battani
v.                                           United States District Judge

COMMISSIONER OF SOCIAL SECURITY,             Michael Hluchaniuk
                                             United States Magistrate Judge

                    Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 12)

I.    **PROCEDURAL HISTORY**

      A.    **Proceedings in this Court**

      On November 16, 2011, plaintiff Jermaine R. Tobey filed the instant suit

seeking judicial review of the Commissioner's unfavorable decision disallowing

benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1

(b)(3), District Judge Marianne O. Battani referred this matter to the undersigned

for the purpose of reviewing the Commissioner's decision denying plaintiff's claim

for a period of disability and disability insurance benefits.  (Dkt. 3).  This matter is

before the Court on cross-motions for summary judgment.  (Dkt. 9, 12).

      B.    **Administrative Proceedings**

      Plaintiff filed the instant claim for supplemental security income on March

1

5, 2010, alleging that he was disabled on May 15, 2009.  (Dkt. 7-5, Pg ID 152-55).[1]

The claim was initially disapproved by the state agency responsible for making

disability determinations on behalf of the Commissioner on August 19, 2010.

(Dkt. 7-3, Pg ID 106).  Plaintiff requested a hearing and on May 23, 2011, plaintiff

appeared with counsel before Administrative Law Judge ("ALJ") Gregory Holiday,

who considered the case *de novo*.  (Dkt. 7-2, Pg ID 40-79).  In a decision dated

May 31, 2011, the ALJ found that plaintiff was not disabled. (Dkt. 7-2, Pg ID 29-

37).  Plaintiff requested a review of that decision, and the ALJ's decision became

the final decision of the Commissioner when, after review of additional exhibits

(Dkt. 7-2, Pg ID 22),[2] the Appeals Council, on September 21, 2011, denied

plaintiff's request for review.  (Dkt. 7-2, PG ID 18-22); *Wilson v. Comm'r of Soc.*

*Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

---

[1]Plaintiff filed a prior application for supplemental security income on January 2, 2004.  Administrative Law Judge Roy Roulhac found plaintiff was not disabled in a decision dated September 17, 2004.  (Dkt. 7-2, Pg ID 81-92).  That decision is final.  (Dkt. 7-3, Pg ID 81-92).

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

At the time of the hearing, plaintiff was 31 years old.  (Dkt. 7-2, Pg ID 31). Plaintiff's relevant work history included work as a retail clerk and as a stock room clerk.  *Id.*  In denying plaintiff's claims, defendant Commissioner considered a history of HIV status, cervical myositis, herniated cervical disc, obesity, major depressive disorder, panic disorder and anxiety disorder.  (Dkt. 7-2, Pg ID 31-32).

The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff had not engaged in substantial gainful activity since March 5, 2010, the application date.  (Dkt. 7-2, Pg ID 32).  At step two, the ALJ found that plaintiff's HIV status, cervical myositis, herniated cervical disc, obesity, major depressive disorder, panic disorder and anxiety disorder were "severe" within the meaning of the second sequential step.  *Id.*  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 7-2, Pg ID 32-33).  At step four, the ALJ found that plaintiff was unable to perform his past relevant work.  (Dkt. 7-2, Pg ID 36).

3

The ALJ denied benefits at step five because plaintiff could perform a significant number of jobs in the national economy; namely, crate liner and packager.  (Dkt. 7-2, Pg ID 36-37).

### B.    Plaintiff's Claims of Error

Plaintiff claims that the ALJ erred in not giving controlling weight to the opinions of his treating physicians and that the ALJ relies on no medical evidence to substantiate his unfavorable opinion.  Plaintiff argues that the ALJ refers to the medical record "in such limited and casual terms that the reader would be unable to discern where the ALJ is finding his information."  (Dkt. 9, p. 11).  Plaintiff contends that the ALJ failed to state what weight is given to any of the medical reports or the reason for such weight, as required under the law, citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007).

Plaintiff further argues that the ALJ's residual functional capacity ("RFC") determination did not accurately portray plaintiff's physical impairments and substantial treatment.  Plaintiff claims the ALJ did not articulate his findings or point to any medical records in reaching his RFC.  Plaintiff contends that the ALJ found that obesity is a severe impairment but his decision does not contain an evaluation of obesity in accordance with SSR 02-01p, which states that when obesity is a severe impairment, an assessment should be made of an individual's ability to perform routine movement and necessary physical activity within the

4

work environment.

The ALJ found major depressive disorder, panic disorder and anxiety disorder as severe impairments and concluded that plaintiff had moderate limitations in social functioning and concentration, persistence or pace. Plaintiff argues that the ALJ never attempted to factor the moderate limitations into his RFC findings. Plaintiff claims *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (2010) requires that the hypothetical question posed to the vocational expert must accurately describe the concentration limitations. Plaintiff also objects to the vocational expert testimony that a claimant can have two health-related absences per month on a continuing basis, arguing that the vocational expert gave no explanation or justification for the allowance of excessive amount of absences.

Finally, plaintiff argues that the ALJ failed to comply with Social Security Ruling ("SSR") 96-8p because he never evaluated whether plaintiff was capable of performing full-time work.

### C.    The Commissioner's Motion for Summary Judgment

The Commissioner argues that plaintiff claims the ALJ erred in not giving controlling weight to the opinions of his treating doctors, but fails to specify which, if any, treating physician opinions the ALJ did not adequately address. The Commissioner explains that none of plaintiff's treating or examining physicians opined that he was incapable of working.

5

Plaintiff's physical impairments

Plaintiff first saw Patricia Brown, M.D. on October 2, 2009, on referral from a Dr. Waad Dakkak for possible acute HIV infection.  (Dkt 7-7, Pg ID 191-93). Plaintiff reported that he had been ill since the third week of August, but that his symptoms had gradually improved and he felt much better for the last week, although he still felt fatigued and weak.  *Id.*  Plaintiff complained of intermittent pain in his neck and right arm and panic attacks at work in the past.  *Id.*  Dr. Brown noted a normal physical examination and mononucleosis-like syndrome, recommended additional HIV testing, and counseled plaintiff to have safer sex.  *Id.*

On October 23, 2009, Dr. Brown diagnosed plaintiff with HIV.  (Dkt. 7-7, Pg ID 194-95).  Plaintiff stated that he was feeling improved overall and still fatigued, but that the fatigue was resolving.  *Id.*  Dr. Brown noted a normal physical exam and "no unusual anxiety or evidence of depression."  *Id.*  Dr. Brown reviewed plaintiff's treatment options with him and advised him to follow up with her in four to six weeks.  *Id.*  Dr. Brown saw plaintiff for a follow-up appointment on November 20, 2009.  (Dkt. 7-7, Pg ID 196-97).  Dr. Brown noted that plaintiff's symptoms had continued to resolve and that he was seeing a mental health provider for a possible working diagnosis of anxiety/possible social anxiety disorder.  *Id.* Dr. Brown again reviewed plaintiff's treatment options with him and advised him to return in six to eight weeks.  *Id.*

Plaintiff saw Dr. Brown again in February 2010 for a follow-up appointment.  (Dkt. 7-7, Pg ID 198-99).  Plaintiff reported that he felt well overall, his appetite was good and he had no fevers or night sweats, and that he had not followed up on his mental health appointments due to car problems.  *Id.*  Dr. Brown discussed alternative treatments with plaintiff, adjusted his medication and advised him to return in six to eight weeks.  *Id.*

Plaintiff saw Dr. Brown for a follow-up appointment on October 8, 2010.  (Dkt. 7-7, Pg ID 217-18).  Plaintiff reported he was feeling well, with no chest pain, shortness of breath or wheezing, and that he had been following regularly with his mental health treatment.  *Id.*  On physical exam, Dr. Brown observed that plaintiff was in no apparent distress, had no unusual anxiety or evidence of depression, and was obese.  *Id.*  Dr. Brown assessed plaintiff as "clinically stable," noted that he "has maintained excellent adherence with ARV" and advised him to follow up with her in four to five months and to continue to regularly follow up with his mental health treatment.  *Id.*

Plaintiff's mental impairments

On October 29, 2009, Angela DiSante, a nurse practitioner ("NP") at University Health Center, performed an initial intake assessment of plaintiff.  (Dkt. 7-7, Pg ID 209-12).  Plaintiff complained of panic attacks when in stressful situations and suicidal ideation, and that he had to quit his job in May 2009

because of panic attacks.  *Id.*  Plaintiff reported that he is taking Hydroxyzine, Klonopin, Lamictal, Prazosin, Celexa, and Xanax.  *Id.*  NP DiSante noted that plaintiff was well-groomed, had intact short- and long-term memory, good insight and judgment, appropriate behavior, no risk of self-harm, appropriate affect, and logical and coherent thought, and diagnosed plaintiff with major depressive disorder, recurrent, moderate and panic disorder without agoraphobia.  *Id.*  NP DiSante rated plaintiff's global assessment of functioning ("GAF") score at 62[3], prescribed a mood stabilizer and adjusted plaintiff's other medications.  *Id.*

On June 8, 2010, Terrance Mills, Ph.D., a licensed psychologist, conducted a consultative psychological evaluation of plaintiff for plaintiff's claimed disabilities of depression and panic disorder.  (Dkt. 7-7, Pg ID 201-03).  Plaintiff reported that he has suffered from depression "on and off" since he was 16 years old, he gets along "fair" with people in general, got along with his coworkers, denied any significant memory impairment, hallucinations or delusions, and occasionally has suicidal thoughts.  *Id.*  Dr. Mills observed that plaintiff's interactions were positive, his responses reality based, he demonstrated good memory, and he demonstrated appropriate affect.  *Id.*  Dr. Mills diagnosed plaintiff with major depressive

---

[3]A GAF in the 61 to 70 range indicates some mild symptoms or some difficulty in social or occupational functioning, but generally functioning pretty well, has some meaningful interpersonal relationships.  *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV) 32 (4th ed. 1994).

disorder, recurrent, panic disorder without agoraphobia and anxiety disorder NOS, and rated plaintiff's GAF score at 45, with a guarded prognosis. *Id.* Dr. Mills opined that plaintiff's ability to understand, retain and follow simple instructions and perform basic routine tasks appeared to be adequate, his ability to appropriately interact with coworkers, supervisors, and the public appeared to be mildly impaired, and that plaintiff was able to independently manage his financial matters. *Id.*

On July 20, 2010, NP DiSante evaluated plaintiff and noted plaintiff reported high anxiety in public, that he had a panic attack at WalMart and that he is sleeping poorly. (Dkt. 7-7, Pg ID 212-15, 229-31). NP noted that plaintiff was well-groomed, exhibited anxious mood, appropriate behavior and affect, good insight and cooperative attitude, and his short- and long-term memory were intact. *Id.* NP DiSante's diagnosis of plaintiff remained the same and she rated his GAF at 63. *Id.*

Plaintiff saw NP DiSante again on August 10, 2010 for a follow-up appointment and medication review. (Dkt. 7-7, Pg ID 232-34). Plaintiff reported anxiety and sleep problems and continuing family strife. *Id.* Plaintiff's mental status exam was again normal, with anxious mood. *Id.* NP DiSante made the same diagnosis as before and rated his GAF score at 66. *Id.* Plaintiff returned to see NP DiSante on August 24, 2010, and complained of getting lost on his way to the

appointment and feeling more irritated, annoyed and agitated and continuing to have problems sleeping.  (Dkt. 7-7, Pg ID 235-37).  NP DiSante noted a normal mental status, other than being anxious and having mildly impaired short term memory, possibly due to sleep deprivation, continued the diagnosis, adjusted plaintiff's medications and rated his GAF score at 64.  *Id.*

On February 17, 2011, plaintiff reported to NP DiSante that he had a bad week, was not sleeping well and was hearing voices.  (Dkt. 7-7, Pg ID 226-28).  NP DiSante observed that plaintiff exhibited high anxiety and tension and that he smiled throughout the session but was very distressed, and otherwise noted a normal mental exam.  *Id.*  NP DiSante adjusted plaintiff's medication, continued his diagnosis and rated his GAF score at 63.

Plaintiff saw NP DiSante again on February 24, 2011 for a medication review.  (Dkt. 7-7, Pg ID 223-25).  He reported frustration, anger, hopelessness and thoughts of suicide.  *Id.*  Plaintiff was well groomed, his short and long-term memory was intact, he demonstrated good judgment, appropriate behavior, and logical and coherent thought and was fully oriented.  *Id.*  Plaintiff was assessed as unstable, but using learned coping mechanisms.  *Id.*  NP DiSante rated plaintiff's GAF score at 68 and noted that plaintiff needs weekly appointments for now.  *Id.*

On March 3, 2011, plaintiff saw NP DiSante for a medication review and reported that his current medications have been really helpful and that he is in a

better mood.  (Dkt. 7-7, Pg ID 220-22).  He reported that the Lamictal makes him more anxious but helps with his depression.  *Id.*   NP DiSante noted a normal mental status exam, continued his diagnosis and rated plaintiff's GAF score at 65. *Id.*

The Commissioner argues that no treating or examining physician opined that plaintiff was incapable of working, and the clinical findings and opinions of these physicians were consistent with the ALJ's findings that plaintiff was capable of performing a limited range of medium exertional work.  The Commissioner contends, contrary to plaintiff's suggestion, that the ALJ had sufficient information to determine the issue of disability and thus it was not necessary for him to re-contact any of plaintiff's physicians for additional information.  The ALJ specifically discussed the medical evidence that he relied upon in reaching his decision.  In addition, although there was no evidence in the record concerning cervical myositis or a herniated cervical disc, and only a brief mention of plaintiff's obesity, the ALJ gave plaintiff the benefit of the doubt and also found those conditions to be "severe."

The Commissioner further argues that the ALJ complied with SSR 96-8p because his finding that plaintiff was not disabled necessarily constituted a finding that plaintiff is capable of working on a full-time basis.  The ALJ described the maximum amount of each work-related activity plaintiff could perform and

11

accordingly adequately evaluated plaintiff's ability to perform full-time work.

The Commissioner further contends that the ALJ's RFC adequately reflected the functional limitations caused by plaintiff's severe impairments. The ALJ accounted for the limitations caused by plaintiff's cervical myositis and herniated disc (even though there was no evidence in the record concerning these conditions) by limiting him to medium exertional work and to work that required no more than occasional rotation, flexion, or extension of his neck. The ALJ accounted for plaintiff's depression and anxiety by limiting him to low stress jobs which did not require more than occasional decision-making or changes in the work setting, and no production rate or production pace work, and by limiting him to jobs that required no more than brief interaction with the public, co-workers or supervisors. The ALJ further accounted for the fact that plaintiff might need to take time off from work due to his severe impairments by limiting him to jobs that allowed him to take up to two health-related absences per month. The ALJ properly found that there is no evidence in the record that plaintiff's claimed obesity imposed any functional limitations, but that plaintiff's obesity was accommodated by limiting him to medium exertional work.

In response to plaintiff's argument that there was no basis for the VE's testimony that employers will generally tolerate two health-related absences per month, the Commissioner argues that the testimony was based on the VE's

12

experience and that plaintiff did not object to the VE's qualifications when given the opportunity to do so at the hearing.  The ALJ thus was entitled to rely on the VE's experience in finding that plaintiff could perform a significant number of jobs in the national economy.

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the

13

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.

McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v.

Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.

Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul.

96-7p, 1996 WL 374186, *4.

14

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*,

15

245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

## B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the

17

> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

 "Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

 If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

**C.      Analysis and Conclusions**

**1.      Whether Substantial Evidence Supports the ALJ's Evaluation of the Physicians' Opinions**

Plaintiff claims that the ALJ did not rely on any medical evidence in reaching his findings and only "casually refer[red]" to the medical records. However, plaintiff does not specify which, if any, treating physician opinions the ALJ did not adequately address.  A review of the ALJ's opinion demonstrates that he did review the medical record evidence and discuss the medical evidence he relied upon on reaching his findings.  Specifically, the ALJ reviewed and discussed Dr. Brown's treatment records, Dr. Mills' consultative psychological evaluation and plaintiff's submitted medical records.  (Dkt. 7-2, Pg ID 34-36).

The ALJ noted that Dr. Brown's records show that plaintiff was diagnosed with HIV on October 23, 2009, that he was undergoing treatment and receiving medications, and that on November 1, 2010, plaintiff was "clinically stable" and had maintained "excellent" adherence with his treatment.  Finally, the ALJ noted that Dr. Brown placed no restrictions on plaintiff's activities other than to practice safer sex.  *Id.*

The ALJ also properly noted that there is a lack of evidence in the record that plaintiff is undergoing treatment for cervical myositis or a herniated cervical disc (other than taking medications), and only a brief mention of obesity.  The ALJ

19

noted that the record demonstrates that plaintiff's physical examination was within normal limits, thus suggesting that plaintiff's physical condition has improved so much that he does not require constant medical attention.  (Dkt. 7-2, Pg ID 34-35).

The ALJ also reviewed Dr. Mills' consultative evaluation and records from University Health Group and discussed the functional limitations imposed by plaintiff's diagnoses of a major depressive disorder, recurrent, a panic disorder without agoraphobia and an anxiety disorder NOS.  (Dkt. 7-2, Pg ID 35-36).  The ALJ listed the medications plaintiff was taking, noted that plaintiff was reported as responding well to those medications, and that Lamictal made him more anxious but also helped with his depression.  *Id.*

The ALJ found that plaintiff has a mild restriction on his daily living activities and a moderate restriction on his social functioning, based on Dr. Mills' evaluation that plaintiff got along "fair" with other people but tended to keep to himself, had a "fair" relationship with his family, has friends, and got along with his coworkers.  Plaintiff stated that he was able to independently care for his hygiene and grooming needs and that he helped with household chores, but did not cook or wash laundry.  Dr. Mills stated that his interactions with plaintiff were appropriate and found that plaintiff's ability to appropriately interact with his coworkers, supervisors and the public appeared to be mildly impaired.  *Id.*

The ALJ found that plaintiff had a moderate restriction on his concentration,

persistence and pace based on Dr. Mills' evaluation that plaintiff had the ability to understand, retain, and follow simple instructions and perform basic routine tasks. Dr. Mills wrote that plaintiff's responses to his questions were spontaneous, clear, on target and of adequate depth and that he displayed no circumstantial or tangential tendencies.  Plaintiff denied having any significant memory impairment and denied having any hallucinations or delusions and only occasional suicidal ideation, but that he was able to deal with them.  The ALJ further noted that there is no evidence that plaintiff had repeated episodes of decompensation of extended duration.

Therefore, contrary to plaintiff's assertion, the ALJ did not discount plaintiff's treating physicians' opinions.  To the extent plaintiff is arguing that the ALJ did not give "controlling weight" to nurse practitioner DiSante's opinions, that claim of error should be denied.  Under the regulations, a "treating source" entitled to "controlling weight" includes physicians, psychologists, or other "acceptable medical source[s]," and a nurse practitioner is not considered a "treating source" or other "acceptable medical source."  *See* 20 C.F.R. §§ 404.1513(d), 416.913(d).  "Because [Ms. DiSante] is not an acceptable medical source, the ALJ was not required to provide good reasons for the weight given to her opinions under §§ 404.1527(d)(2), 416.927(d)(2)."  *Mulkey v. Comm'r of Soc. Sec.*, 2011 WL 4528485 (W.D. Mich. June 14, 2011) (noting there is no

21

requirement that the ALJ articulate good reasons for his or her decision assigning specific weight to the opinion of such a source), *adopted by* 2011 WL 4528479 (W.D. Mich. Sept. 29, 2011).

Rather, as a nurse practitioner, Ms. DiSante is considered to be an "other source" that the agency "may also use [as] evidence . . . to show the severity of [the claimant's] impairment(s) and how it affects his ability to work." *See* 20 C.F.R. §§ 404.1513(d), 416.913(d); *see also Phillips v. Comm'r of Soc. Sec.*, 2008 WL 4394274, at *4 (holding that even though the nurse practitioner treated plaintiff, her opinion is viewed as evidence from an "other source"). SSR 06-03p further clarifies that "[o]pinions from . . . medical sources [] who are not technically deemed 'acceptable medical sources' under [the agency's] rules[ ] are important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-03p. However, there is no requirement that the ALJ must expressly discuss every piece of record evidence. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."). Rather, "SSR 06-03p requires an ALJ to "consider" the opinions expressed by these "other" medical sources." *Phillips*, 2008 WL 4394274 at *4. Although the ALJ did not mention Ms. DiSante by name, he did indicate that he considered those records and opinion evidence in

support, in accordance with the requirements of SSR 06-03p, in support of his findings.  (Dkt. 7-2, Pg ID 33-36).  *See Carroll v. Astrue*, 2010 WL 2643420, at *11 (N.D. Ohio July 1, 2010) (finding that the ALJ's use of "boilerplate language" that weight was given to "other opinion evidence" "sufficiently addresses the opinions of Ms. Obias and Ms. Bonner [even though his opinion did not mention those persons by name] when considering what else the ALJ did besides state boilerplate language") (citing *Kornecky*); *see also Daniels v. Comm'r of Soc. Sec.*, 152 Fed. Appx. 485, 489 (6th Cir. 2005) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.").

Furthermore, plaintiff has failed to demonstrate how Ms. DiSante's opinions are inconsistent with Dr. Mills' opinions or the ALJ's findings, if at all, and that a different outcome could result had Ms. DiSante's opinions been assessed more specifically in the written opinion.  Ms. DiSante's records are consistent with Dr. Mill's opinion, Ms. DiSante did not opine that plaintiff was more restricted than found by the ALJ, and, as stated above, the ALJ did consider plaintiff's medical record in reaching his findings as required by 20 C.F.R. § 416.927 and SSRs 96-2p, 95-5p, 96-6p and 06-3p.  (Dkt. 7-2, Pg ID 33, 35).  Therefore, even if the ALJ should have more fully discussed the Ms. DiSante's opinions in his opinion, there is no evidence that such further analysis would change the case's outcome, and

plaintiff's claim of error should be denied.  *See Austin v. Astrue*, 2012 WL 1970227, at *9 (E.D. Mich. Mar. 19, 2012) (while ALJ should have discussed New Passages records, remand is not required because it would not change the case's outcome), *adopted sub nom Austin v. Comm'r of Soc. Sec.*, 2012 WL 1970449 (E.D. Mich. June 1, 2012); *Miller v. Comm'r of Soc. Sec.*, 2009 WL 997312, at *3 (E.D. Mich. Apr. 14, 2009) (declining remand despite finding that the ALJ should have discussed chiropractors' opinions, where such remand would not "have made any difference"); *Carroll*, 2010 WL 2643420, at *11 (holding that remanding to more fully consider the opinions of "other sources" would be an "idle and useless formality" because plaintiff failed to show how these opinions would affect the severe impairments that the ALJ noted, or how they would change the RFC); *Phillips*, 2008 WL 4394274, at *5 (refusing to remand, even though the ALJ's failure to address the NP's opinion amounted to error, because an order directing the ALJ to consider the opinions would not lead to a different result).

Finally, plaintiff argues that the ALJ violated SSR 96-8p, claiming that the ALJ failed to evaluate whether plaintiff was capable of working a competitive work schedule.  However, "[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing." *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 547 (6th Cir. 2002) (citing *Bencivengo v. Comm'r of Soc. Sec.*, No. 00-1995, 251 F.3d 153 (Table) (3d

Cir. Dec. 19, 2000).  SSR 96-8p requires an ALJ to individually assess the

exertional (lifting, carrying, standing, walking, sitting, pushing and pulling) and

non-exertional (manipulative, postural, visual, communicative, and mental

functions) capacities of the plaintiffs in determining a plaintiff's RFC.  *See id.*

(citation omitted).  The ALJ is not required to discuss those capacities for which no

limitation is alleged.  *Id.*  "[T]he ALJ need only articulate how the evidence in the

record supports the RFC determination, discuss the claimant's ability to perform

sustained work-related activities, and explain the resolution of any inconsistencies

in the record."  *Id.*  Here, as discussed above, the ALJ discussed the medical and

other evidence on the disputed issues and his narrative discussion adequately

explained the basis of plaintiff's RFC.  The ALJ thus sufficiently articulated his

residual functional capacity finding under SSR 96-8p.  For these reasons, and

because a review of the ALJ's decision and the administrative record reveals that

the ALJ's decision is well-supported by substantial evidence, plaintiff's claim of

error should be rejected.

### 2.     Whether the ALJ's RFC Assessment Adequately Reflected the Functional Limitations Caused by Plaintiff's Impairments

The ALJ found that plaintiff had the following severe impairments: HIV

status, cervical myositis, herniated cervical disc, obesity, major depressive

disorder, panic disorder, and anxiety disorder, and determined that plaintiff has the

following RFC:

> to perform medium work as defined in 20 CFR
> 416.927(c) except being unable to lift more than 50
> pounds occasionally and 20 pounds frequently, not more
> than occasional rotation, flexion, or extension of his
> neck, being limited to occupations which do not require
> complex written or verbal communications, being
> restricted to low stress jobs, defined as requiring not
> more than occasional decision-making and not more than
> occasional changes in the work setting, being restricted to
> work where there is no production rate or production
> pace, having not more than brief (up to 10% of the work
> day) interaction with the public, co-workers, and
> supervisors, and having health-related absences of up to
> two times per month.

(Dkt. 7-2, Pg ID 32-33).   RFC is an administrative finding of fact reserved to the

Commissioner, 20 C.F.R. §§ 404.1527(d)(2),(3), 416.927(d)(2),(3), and represents

the most, not the least, a claimant can do despite his impairments.   20 C.F.R. §§

404.1545(a), 404.945(a); *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429

(6th Cir. 2007).

Plaintiff argues that the ALJ failed to identify plaintiff's limitations as a

result of his severe impairments and curiously states that the ALJ "points to no

medical records for his assertions."  (Dkt. 9, p. 13).  However, the ALJ evaluated

the medical evidence in reaching his RFC finding and plaintiff fails to identify

what, if any, limitations the ALJ failed to address in his lengthy RFC.

In his opinion, the ALJ addressed every severe impairment and the medical

records, or lack thereof, regarding each impairment.  He noted that the plaintiff has

26

HIV, that he was "clinically stable" as of November 2011, and that plaintiff's treating physician placed no restrictions on plaintiff's activities other than to practice safer sex.  The ALJ noted a lack of evidence regarding plaintiff's cervical myositis and herniated cervical disc, no evidence that plaintiff is undergoing treatment for his cervical spine other than the taking of medication, and only a brief mention of obesity.  Nonetheless, the ALJ accounted for plaintiff's limitations by limiting him to medium work, except lifting no more than 50 pounds occasionally and 20 pounds frequently, and to jobs that required no more than occasional rotation, flexion, or extension of his neck, and by allowing plaintiff to take up to two health-related absences per month.

Plaintiff's claim that the ALJ failed to factor into his finding that plaintiff has moderate limitations in social functioning and concentration, persistence and pace similarly fails. The ALJ sufficiently accounted for plaintiff's depression, panic disorder and anxiety and accompanying mild restriction on his daily activities and moderate restrictions on his social functioning and concentration, persistence and pace by limiting him to jobs which do not require complex written or verbal communications and limiting him to low stress jobs that do not require more than occasional decision-making and not more than occasional changes in the work setting, and no production rate or production pace, and not having more than brief (defined as up to 10% of the work day) interaction with the public, co-

workers and supervisors.  These limitations are reasonably consistent with someone who has moderate impairment in social functioning and concentration, persistence and pace.  *See Black v. Comm'r of Soc. Sec.*, 2012 WL 4506018, at *14 (N.D. Ohio Sept. 28, 2012) (holding ALJ's RFC, restricting plaintiff to "simple, routine, and repetitive tasks performed in a work environment free of fast paced production requirements, involving only simple work related decisions, and routine work place changes" and "superficial and no direct interactions with the public, and only occasional interaction with coworkers" adequately accommodated plaintiff's moderate difficulties with concentration, persistence and pace) (citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010)).

The plaintiff also argued that the ALJ did not properly evaluate his obesity in accordance with SSR 02-01p.  SSR 02-01p "does not mandate a particular mode of analysis" with respect to obese patients.  *Bledsoe v. Barnett*, 165 Fed. Appx. 408, 411 (6th Cir. 2006).  Rather, SSR 02-01p "only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations."  *Id.* at 412.  Here, the ALJ's decision did consider plaintiff's obesity, finding it to be a "severe" impairment at step two of the sequential evaluation process.  (Dkt. 7-2, Pg ID 32).  The ALJ further properly noted that although Dr. Brown mentioned plaintiff's obesity, she never reported any functional limitations caused by his obesity.  (Dkt. 7-2, Pg ID 35).  Tellingly, plaintiff offers no evidence

28

that his obesity caused any additional functional limitations beyond those found by the ALJ.  Accordingly, plaintiff's claim of error should be denied.

Finally, plaintiff argues that there is no basis for the VE's statement that a claimant can have two health-related absences per month.  Contrary to plaintiff's argument, the VE testified that the statement was based on her experience (Dkt. 7-2, Pg ID 76), and plaintiff failed to attack the VE's qualifications or otherwise offer any evidence to rebut the VE's testimony.  Accordingly, as the Commissioner correctly states, the ALJ was entitled to rely on the VE's expertise in finding that plaintiff was capable of performing a significant number of jobs in the national economy.  *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.").  Accordingly, plaintiff's claim should be denied.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and

29

Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 22, 2013                    s/Michael Hluchaniuk
                                           Michael Hluchaniuk
                                           United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 22, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Joshua L. Moore, Vanessa Miree Mays, AUSA, and the Commissioner of Social Security.

                                           s/Tammy Hallwood
                                           Case Manager
                                           (810) 341-7850
                                           tammy_hallwood@mied.uscourts.gov